# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

ROBERT WOODWARD                                                                                PLAINTIFF
#0452670

V.                                  No. 5:19-cv-258-DPM-JTR

WENDY KELLEY, Director, ADC;
JAMES GIBSON, Warden; DEXTER
PAYNE, Deputy Director, ADC;
MAPLES, Lieutenant; and
JIM DEPRIEST, Assistant Director, ADC                                      DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to Chief United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Marshall may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction

Plaintiff Robert Woodward ("Woodward"), a former inmate in the Arkansas Division of Correction ("ADC"), filed this *pro se* § 1983 action against Defendants ADC Director Wendy Kelley ("Kelley"), ADC Deputy Director Dexter Payne ("Payne"), Warden James Gibson ("Gibson"), Lieutenant Maples ("Maples"), and ADC Assistant Director Jim DePriest ("DePriest"). *Doc. 1*. After screening the Complaint, the Court allowed Woodward to proceed with the following claims: (1) Kelley, DePriest, and Gibson retaliated against him and denied him access to the courts; (2) Payne denied him access to the courts; and (3) Maples violated his Eighth Amendment rights by refusing to allow him to wear wrist protectors while being transported to prison in North Carolina. *Doc. 9*.

Defendants Kelley, Gibson, Payne, and Maples have filed a Motion to Dismiss and Brief in Support. *Docs. 11 & 12*. Woodward has filed a Response.[1] *Doc. 19*. Thus, the issues are ready for disposition.[2]

---

[1] To survive Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), Woodward's Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere labels, conclusions, or formulaic recitations of the elements of a cause of action are insufficient. *Id.* In ruling on a motion to dismiss, the Court may properly take judicial notice of public records and consider them. *Stahl v. U.S. Dep't of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003); *see Papasan v. Allain*, 478 U.S. 265, 269 n.1 (1986) (the Court is "not precluded in [its] review of the complaint from taking notice of items in the public record" without converting a motion to dismiss to a motion for summary judgment).

[2] Defendant DePriest did not join the Motion to Dismiss because he was never served. *See Doc. 18* (unexecuted summons as to DePriest). However, the Court *sua sponte* recommends that

## II. Woodward's Relevant Litigation History in the Eastern District of Arkansas

Between December 18, 2018 and January 30, 2019, a span of forty-four days, Woodward filed seventeen lawsuits against various ADC employees, CMS medical employees, and other state actors raising constitutional claims arising from his confinement in the ADC.[3]

On March 14, 2019, Woodward and all Defendants in fifteen of the seventeen § 1983 actions filed a Joint Motion to Dismiss With Prejudice.[4] In support of the

---

Woodward's claims against Defendant DePriest be dismissed for the same reasons that support the dismissal of Woodward's claims against Defendants Kelley, Gibson, Payne, and Maples.

[3]The Eastern District of Arkansas cases, in chronological order, are: (1) *Woodward v. Gibson*, *et al*., No. 5:18-cv-315-JM (denial of access to church services); (2) *Woodward v. Bland*, *et al*., No. 5:18-cv-319-DPM (denial of medical care); (3) *Woodward v. Gibson*, *et al*., No. 5:18-cv-321-DPM (denial of drinking cup); (4) *Woodward v. Gibson*, *et al*., No. 5:19-cv-4-JM (denial of sick call and grievance forms); (5) *Woodward v. Gibson*, *et al*., No. 5:19-cv-5-KGB (policy of showering in cells); (6) *Woodward v. Payne*, No. 5:19-cv-6-BRW (denial of grievance process by "rubberstamping" appeals challenging the denial of prison grievances); (7) *Woodward v. Gibson*, *et al*., No. 5:19-cv-7-KGB (unconstitutional phone policy interfering with his access to counsel); (8) *Woodward v. Cook*, *et al*., No. 5:19-cv-8-JM (challenge to various Varner Supermax policies re: commissary purchases; retaliation; and interference with right of access to the courts and to communicate with his family); (9) *Woodward v. Gibson*, *et al*., No. 5:19-cv-19-JM (unconstitutional noise level); (10) *Woodward v. Kelley*, *et al*., No. 5:19-cv-23-JM (Kelley illegally extradited him to Arkansas and "kidnapped" him; Payne and Gibson refused to intervene); (11) *Woodward v. Kelley*, *et al*., No. 5:19-cv-25-JM (various allegations about conditions at Delta Regional Unit); (12) *Woodward v. Kelley*, *et al*., No. 5:19-cv-26-JTK (various allegations about conditions upon arrival at Varner Supermax); (13) *Woodward v. Gibson*, *et al*., No. 5:19-cv-27-KGB (denial of access to fingernail clippers); (14) *Woodward v. Buchman*, *et al*., No. 5:19-cv-46-JM (discharged prematurely after surgery); (15) *Woodward v. Bivens*, No. 5:19-cv-47-JM (denial of medical care); (16) *Woodward v. Kelley*, *et al*., No. 5:19-cv-48-KGB (no outside recreation); and (17) *Woodward v. Kelley*, *et al*., No. 5:19-cv-49-DPM (no emergency call button).

[4] The Joint Motion was not filed in two cases, Nos. 5:19-cv-6-BRW and 5:19-cv-25-JM, because both of those cases had previously been dismissed at the screening stage.

3

dismissal of those cases, Woodward submitted a sworn Declaration in which he stated the following:

> (1)   During my incarceration at the ADC, I filed 17 separate lawsuits against ADC staff, management team, medical employees, and other state actors . . . [all raising complaints about the conditions of my confinement.]
>
> (2)   [Following a] very positive and productive meeting with . . . [ADC counsel], I believe that my outstanding issues have been adequately heard and resolved. As a compromise, I am now willing to dismiss all of my lawsuits listed in the joint motion to voluntarily dismiss with prejudice *so long as the ADC can get me back to the North Carolina Department of Correction within the next seven days*.
>
> (3)   I have not been threatened, forced or coerced by anyone into voluntarily dismissing my lawsuits. It is my desire to conclude my litigation of all of these claims so that I can put these behind me and go home to be near my family.
>
> (4)   I completely understand that a voluntary dismissal with prejudice means that I can never bring these claims again in federal court.
>
> (5)   I have also agreed not to bring new lawsuits about these same manners after I am transferred because we have completely and fully resolved all of these matters and the issues will be moot if I am taken to North Carolina in the next seven days.
>
> (6)   There are no additional promises that have been made to me. This is the complete agreement and all that I want to do is go to North Carolina.

*See, e.g., Woodward v. Gibson, et al.*, E.D. Ark. No. 5:18-cv-315-JM, *Doc. 15-1* (emphasis added).

Seven days, one hour and forty-two minutes after filing the Joint Motion to Dismiss,[5] Woodward's physical custody was transferred to the North Carolina Department of Correction ("NCDC"), where he remains incarcerated. *Doc. 1 at 4*; *see also Woodward v. Kelley, et al.*, No. 5*:*19-cv-23-JM*, Doc. 27.*

Shortly after beginning his incarceration in NCDC, Woodward filed a Motion to Withdraw Settlement in his fifteen recently dismissed § 1983 cases in the Eastern District of Arkansas. In this Motion, Woodward alleged that Kelley, DePriest and others unlawfully induced him to dismiss his § 1983 cases, without disclosing to him that he was "already on the list" to be transferred to North Carolina; and he was not returned to North Carolina within *exactly seven days*, as specified in the Joint Motion to Dismiss with Prejudice. *See*, *e.g.*, No. 5:19-cv-23-JM, *Doc. 23*. He later filed three separate Addendums claiming he was threatened and coerced into agreeing to the dismissal of his cases. *Id. at Docs. 28-30*.

Woodward's Motion to Withdraw Settlement was later denied in all of the fifteen cases in the Eastern District of Arkansas covered by the parties' Joint Motion to Dismiss with Prejudice filed on March 14, 2019. Woodward appealed the dismissal of his cases to the Eighth Circuit Court of Appeals. On November 4, 2019,

---

[5] Woodward was officially transferred to the custody of the North Carolina Detention Center at 1:42 a.m. on March 22, 2019, missing the seven-day deadline by one hour and 42 minutes. *See*, *e.g.*, No. 5:19-cv-23-JM, at *Doc. 27*, *p. 4*. The reason the ADC missed the seven-day deadline, by less than two hours, was due to traffic and other unexpected matters encountered in driving Woodward from Mason, Tennessee to North Carolina. Judge Moody later held this short delay was not material. *Id. at Doc. 32*, *p. 3*.

the Court summarily affirmed the trial courts' rulings denying Woodward's Motion to Withdraw Settlement. *See* E.D. Ark. No. 5:19-cv-46-JM, at *Doc. 33*. Thus, the Orders and Judgments of dismissal entered in all fifteen of Woodward's cases are now *final* and entitled to *res judicata* effect.

On August 9, 2019, Woodward initiated this action as a backdoor attempt to revive the fifteen cases that are now dead and buried in the Eastern District of Arkansas. *Doc. 1*. According to Woodward's Complaint: (1) Kelley, Gibson, and DePriest conspired to convince him to dismiss his fifteen lawsuits to retaliate against him and to block his access to the courts; (2) Payne denied him access to a writing tablet which he needed to perform unspecified legal research; and (3) Maples, while driving him from Mason, Tennessee to North Carolina, refused to allow him to wear wrist protectors, causing unnecessary pain from being handcuffed during the long transport. Woodward names each Defendant in their individual and official capacity but seeks only compensatory and punitive damages.

For the reasons explained below, the Court recommends that Defendants' Motion to Dismiss be granted and that Woodward's Complaint be dismissed in its entirety.

### III. Analysis

### A. Woodward's Claims of Retaliation and Access to the Courts Are Barred By Res Judicata

In his Complaint, Woodward makes the conclusory assertion that, on February 6, 2019, Kelley sent DePriest to threaten and coerce him into dropping all of his pending lawsuits. Kelley's alleged motivation for doing so was to retaliate against Woodward and deny him access to the courts. *Id.* at 5; *Doc. 19 at 2*. These are essentially the *same claims* Woodward raised, unsuccessfully, in his Motion to Withdraw Settlement, which was later denied in all fifteen of his § 1983 cases and then affirmed on appeal to the Eighth Circuit. Accordingly, *res judicata* bars Woodward from pursuing these claims in this action.[6] *Larken v. Wray*, 189 F.3d 729, 732 (8th Cir. 1999) ("When the parties to a previous lawsuit agree to dismiss a claim with prejudice, such a dismissal constitutes a 'final judgment on the merits' for purposes of res judicata.").

"Res judicata incorporates the related concepts of issue preclusion and claim preclusion."[7] *Magee v. Hamline University*, 775 F.3d 1057, 1059 (8th Cir. 2015). A

---

[6]Woodward also makes a vague claim that Gibson placed him on "grievance restriction," without any accompanying facts to explain that claim. Without tying this claim to specific grievances or providing any supporting facts, it is far too vague to state a viable claim for relief. *Ashcroft v. Iqbal*, 556 U.S. at 678 (holding that the plausibility pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and " 'naked assertion[s]' devoid of 'further factual enhancement'") (omitting citations).

[7]Res judicata is considered an affirmative defense that may sometimes be appropriately asserted and resolved in a 12(b)(6) motion. *See*, *e.g.*, *RSM Prod. Corp. v. Freshfields Bruckhaus*

claim is precluded under *res judicata* principles if: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action. *Wintermute v. Kansas Banks Sur. Co.,* 630 F.3d 1063, 1067 (8th Cir. 2011); *In re Anderberg–Lund Printing Co.,* 109 F.3d 1343, 1346 (8th Cir. 1997).

Issue preclusion (also referred to as collateral estoppel) bars relitigation of an issue when: "(1) the issue sought to be precluded is identical to the issue previously decided; (2) the prior action resulted in a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action." *Irving v. Dormire*, 586 F.3d 645, 647-48 (8th Cir. 2009) (omitting citation).

Both doctrines are intended to preclude "parties from contesting matters that they have a had a full and fair opportunity to litigate," in order to "protect against the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent

---

*Deringer U.S. LLP*, 800 F.Supp.2d 182, 189 (D.D.C. 2011) ("Res judicata is an affirmative defense that is usually pled in a defendant's answer, but courts have also allowed parties to assert the defense in a 12(b)(6) motion to dismiss." (citation omitted)); *In re Sonus Networks, Inc.*, Shareholder Derivative Litigation, 499 F.3d 47, 56 (1st Cir. 2007)

decisions." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (omitting internal quotes and citation).

In his Motion to Withdraw Settlement and Addendums filed in all fifteen of his cases in the Eastern District of Arkansas, Woodward stated the following:

> "What I think now may have happened is Wendy Kelley sent Mr. DePriest to try and bluff me out of my lawsuits on 2-6-2019."[8]

> "the deal was reached in bad faith due to the fact I was 'coerced into dismissing my lawsuits under the guise that's the only way I could get placed on the list to go back to N.C. ("North Carolina")"[9]

> "On 2-6-2019 Wendy Kelley sent Jim DePriest to Varner Supermax with the ultimatum of dropping my lawsuits against the ADC."[10]

> "[i]t's a 'sad day' when four 'high-ranking' state officials will 'conspire' to coerce a man out of his lawsuits by leading . . . him [on] . . . that the only way he can see his family is by dropping his lawsuits."[11]

> "Wendy Kelley broke the laws that govern the IAD's and 'snubbed her nose" at every single reasonable effort I made to be returned to N.C. . . . as well as James Gibson."[12]

United States District Judge James M. Moody, Jr. denied Woodward's Motion to Withdraw Settlement in all seven cases assigned to him, and, in doing so, explicitly

---

[8] *See, e.g.*, *Woodward v. Kelley, et al.*, No. 5:19-cv-23-JM, *Doc. 28 at 4*.

[9] *Id.* at *Doc. 29 at 5*.

[10] *Id.* at *Doc. 30 at 2*.

[11] *Id.* at *Doc. 30 at 1*.

[12] *Id.* at *Doc. 30 at 6*.

rejected Woodward's claim that he was coerced and fraudulently induced into settling his § 1983 cases.[13] Among other things, Judge Moody noted that Woodward's claims of "coercion and fraudulent inducement" directly controverted the sworn statement in his Declaration that he had "not been threatened, forced, or coerced by anyone into voluntarily dismissing [his] lawsuits."[14] Judge Moody held that Woodward's claims lacked merit and that the court had inherent authority to enforce the terms and conditions of the unambiguous settlement agreement between Woodward and Defendants that led to the dismissal of all fifteen of his pending § 1983 cases.

In this case, Woodward now makes essentially the same factual allegations to support the same claims for retaliation and denial of access to the courts that were rejected by all the judges in the Eastern District of Arkansas who denied Woodward's Motion to Withdraw Settlement.[15] *See* Complaint, *Doc. 1* at 5 ("Wendy Kelley sent

---

[13]*See Woodward v. Gibson, et al.*, 5:18-cv-315-JM; *Woodward v. Gibson, et al.*, No. 5:19-cv-4-JM, *Doc. 26 at 3*; *Woodward v. Cook, et al.*, No. 5:19-cv-8-JM, *Doc. 27 at 3*; *Woodward v. Gibson, et al.*, No. 5:19-cv-19-JM, *Doc. 37 at 3*; *Woodward v. Kelley, et al.*, No. 5:19-cv-23-JM, *Doc. 32 at 3*; *Woodward v. Buchman, et al.*, No. 5:19-cv-46-JM, *Doc. 24 at 3*; and *Woodward v. Bivens,* No. 5:19-cv-47-JM, *Doc. 23 at 3*.

[14] *See*, *e.g.*, *Woodward v. Kelley, et al.*, No. 5:19-cv-23-JM, *Doc. 32 at 2-3*.

[15] Woodward's fifteen § 1983 cases were assigned to Judge Moody (seven cases); Judge Baker (four cases); Judge Marshall (three cases) and Magistrate Judge Kearney, by consent, in one case.
Judge Baker adopted recommendations holding, *inter alia*, that there was no material breach of the settlement agreement and that Woodward failed to offer any evidence to support his claim the settlement agreement was an "'underhanded deal.'" *Woodward v. Gibson, et al.*, No. 5:19-cv-5-KGB-JJV, *Doc. 18, 30*; *Woodward v. Gibson, et al.*, No. 5:19-cv-7-KGB-BD, *Doc. 24,*

Jim DePriest to threaten me with years in the Supermax if I did not drop all my lawsuits. . . . She . . . either retaliated against me for protecting my rights through the courts or lied to me about doing so in an attempt to coerce me into dropping my lawsuits . . ."). Accordingly, *res judicata* bars Woodward from using this action to pursue the same claims against Defendants Kelley and Gibson that were previously litigated to a now final judgment by Judges Moody, Baker, Marshall, and Kearney, all of whom denied his Motions to Withdraw Settlement, and later had their rulings *affirmed* by the Eighth Circuit Court of Appeals.[16]

---

*35*; *Woodward v. Gibson, et al.*, No. 5:19-cv-27-KGB-JJV, *Doc. 15, 27*; and *Woodward v. Kelley, et al.*, No. 5:19-cv-48-KGB-BD, *Doc. 18, 32.*

      Judge Marshall entered Orders in all three of his cases stating that he did not retain jurisdiction to enforce the settlement agreement, but, to the extent he could reach Woodward's arguments under Rule 60 of the Federal Rules of Civil Procedure, they lacked merit. *Woodward v. Bland, et al.*, 5:18-319-DPM, *Doc. 24*; *Woodward v. Gibson, et al.*, 5:18-321-DPM, *Doc. 24*; and *Woodward v. Kelley, et al.*, 5:19-cv-49-DPM, *Doc. 22.*

      Magistrate Judge Kearney ruled that Woodward's claim "he was coerced into settling" was "not supported by any evidence, and that any delay in arriving in North Carolina was insignificant. *Woodward v. Gibson, et al.*, No. 5:19-cv-26-JTK, *Doc. 30.*

[16]*Woodward v. Gibson, et al.*, 5:18-cv-315 (E.D. Ark.), affirmed Case No. 18-2284 (8th Cir. November 4, 2019); *Woodward v. Bland*, 5:18-cv-319-DPM (E.D. Ark.), affirmed Case No. 19-2575 (8th Cir. November 4, 2019) (unpublished); *Woodward v. Gibson, et al.*, 5:18-cv-321-DPM (E.D. Ark.), affirmed Case No. 19-2461 (8th Cir. November 4, 2019) (unpublished); *Woodward v. Gibson, et al.*, 5:19-cv-4-JM (E.D. Ark.), affirmed Case No. 19-2283 (8th Cir. November 4, 2019) (unpublished); *Woodward v. Cook, et al.*, 5:19-cv-8-JM (E.D. Ark.), affirmed Case No. 19-2329 (8th Cir. November 4, 2019) (unpublished); *Woodward v. Gibson, et al.*, 5:19-cv-19-JM (E.D. Ark.), affirmed Case No. 19-2276 (8th Cir. November 4, 2019) (unpublished); *Woodward v. Kelley, et al.*, 5:19-cv-23-JM (E.D. Ark.), affirmed Case No. 19-2278 (8th Cir. November 4, 2019) (unpublished); *Woodward v. Kelley*, 5:19-cv-26-JTK (E.D. Ark.), affirmed Case No. 19-2319 (8th Cir. November 4, 2019) (unpublished); *Woodward v. Buchman, et al.*, 5:19-cv-46-JM (E.D. Ark.), affirmed Case No. 19-2279 (8th Cir. November 4, 2019) (unpublished); *Woodward v. Bivens*, 5:19-cv-47-JM (E.D. Ark.), affirmed Case No. 19-2281 (8th Cir. November 4, 2019) (unpublished); *Woodward v. Kelley, et al.*, 5:19-cv-49-DPM (E.D. Ark.), affirmed Case No. 19-2296 (8th Cir. November 4, 2019) (unpublished).

Finally, the issue preclusion aspect of *res judicata* also bars Woodward from relitigating any issue related to the validity of his prior settlements of his fifteen § 1983 actions in the context of any claim against any Defendant. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329 (1979) (explaining that the defensive use of collateral estoppel by defendants, even if they were not named in the first action, promotes judicial economy by precluding a plaintiff from relitigating issues by merely "switching adversaries.") (omitting citation); *Taylor v. Sturgell*, 553 U.S. at 892 (issue preclusion bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' *even if the issue recurs in the context of a different claim.*") (omitting citation) (emphasis added); *Bendet v. Sandoz Pharmaceuticals Corp.*, 308 F.3d 907 (8th Cir. 2002) ("Non-mutual defensive collateral estoppel works to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against a different defendant. . . . An essential requirement of non-mutual defensive collateral estoppel is that *the plaintiff* was a party to, or in privity with a party to, the prior adjudication.") (emphasis added) (omitting citation to *Parklane Hosiery*, *supra*); *see also Simmons v. Small Business Admin.*, 475 F.3d 1372, 1374-75 (Fed. Cir. 2007) (per curiam) (holding that where, in the first action, plaintiff unsuccessfully challenged the validity of a settlement agreement based on claims of

12

duress/undue influence and incapacity, she was collaterally estopped, in a second action, from challenging the settlement on a misrepresentation theory).

## B. Woodward's Claim That Payne Denied Him Access to the Courts

Woodward makes the vague claim that, on some unspecified date, Payne denied him access to a writing tablet that he needed to "research law citations," and this prevented him from "get[ting] the books [he] needed due to being illegally held in the Supermax." *Doc. 1 at 9.* Broadly construed, Woodward appears to be arguing that, for want of a writing tablet, his access to the courts was lost, much in the same way that "for want of a horse . . . a kingdom was lost."

Causation is an important but vexing thing that is essential to state a viable access to the courts claim. Nothing about Woodward's conclusory allegations remotely suggest that Payne denying him a writing tablet rises to the level of a constitutional violation. To have standing to proceed with an access to the courts claim, a prisoner must show that he was "actually injured" in regard to a "nonfrivolous and arguably meritorious underlying legal claim." *White*, 494 F.3d at 680. In this respect, "actual injury" means "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis v. Casey*, 518 U.S. 343, 348 (1996). The injury may not be speculative or anticipatory. *See Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008) (prisoner's assertion, that his lack of access to legal materials prevented him

13

from filing a lawsuit "because he did not know what arguments to make," was too "speculative" to constitute "actual injury").

Woodward's claim that Payne did not allow him to have a writing tablet to assist him in his legal research falls woefully short of demonstrating that it caused Woodward to suffer any "actual prejudice" in any "contemplated or existing litigation." Accordingly, the Court recommends that his denial of access to the courts claim against Payne be dismissed, without prejudice.

### C. Woodward's Deliberate Indifference Claim Against Maples

Finally, Woodward contends that Maples, "acting out of anger," refused to allow him to wear medically prescribed wrist protectors during the long drive to North Carolina.[17]

To prevail on a deliberate indifference claim against Maples, Woodward must allege facts that show Maples "actually knew of but deliberately disregarded" his objectively serious medical need. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Because Maples is not a medical professional, Woodward must allege facts sufficient to demonstrate that even a layperson, like Maples, "would have easily recognized the need for medical treatment." *Jones v. Minnesota Dept. of Corr.*, 512 F.3d 478, 483 (8th Cir. 2008) (emphasis added). Woodward has not pled any facts

---

[17]Maples' refusal to allow Wood to wear wrist protectors was likely based on legitimate safety concerns. In a prior case, Maples explained that Woodward had a history of escaping that required the ADC to use "all available security methods" to safely transport him to North Carolina. *Woodward v. Gibson, et al.*, E.D. Ark. Case 5:19-cv-7-KGB, *Doc. 20-4 at 1*.

14

suggesting that he had an objectively serious medical need which required him to wear wrist protectors while he was being transported to North Carolina.

Woodward's allegations also fall short on the subjective prong of deliberate indifference, which requires him to allege facts demonstrating that Maples actually knew that Woodward required wrist protectors. While Woodward contends a doctor issued him a prescription for wrist guards, he does not allege that Maples had *actual knowledge* of this prescription. Instead, Woodward argues the Maples *could have discovered the prescription* if he had called Woodward's doctor or Maples' "boss." *Doc. 19 at 18*.

At best, these allegations suggest that Maples *should have known* that Woodward had an objectively serious medical need to wear wrist protectors under his handcuffs. These vague allegations are not sufficient to state a claim for deliberate indifference, which must be based on *actual knowledge*. *Corwin v. City of Independence, Missouri*, 829 F.3d 695, 699 (8th Cir. 2016) ("it is not enough merely to find that a reasonable person would have known [about the risk], or that [the officer] should have known about the risk"); *Vaughn v. Greene County, Ark.*, 438 F.3d 845, 850 (8th Cir. 2006) ("To establish a constitutional violation, it is not enough that a reasonable officer should have known of the risk. Rather, the plaintiff must demonstrate that the official actually knew of the risk and deliberately disregarded it").

As a matter of law, the vague and conclusory allegations in Woodward's Complaint fail to state a deliberate indifference claim against Maples. *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (holding that "labels and conclusions," a "formulaic recitation of the elements of a cause of action," and "'naked assertions' devoid of 'further factual enhancement'" are insufficient to plead a viable claim for relief and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Accordingly, the Court recommends that Woodward's deliberate indifference claim against Maples be dismissed, without prejudice.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. The Motion to Dismiss filed by Defendants Kelley, Payne, Gibson, and Maples (*Doc. 11*) be GRANTED.

2. All of Woodward's official-capacity claims against all Defendants be dismissed, with prejudice.

3. Woodward's individual-capacity claims against Defendants Kelley, Gibson, and DePriest, be dismissed, with prejudice.

4. Woodward's individual-capacity claims against Defendants Payne and Maples be dismissed, without prejudice.

5. The Court certify that an *in forma pauperis* appeal would not be taken in good faith.

DATED this 28th day of August, 2020.

_____
UNITED STATES MAGISTRATE JUDGE